UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Duro Bag Manufacturing, Inc., et. al.
    Plaintiffs

vs

Printing Services Company, Inc.,
    Defendant

Case No. 1:08-cv-842-TSH
(Hogan, M. J.)

**ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment and their responsive memoranda. (Docs. 41, 42, 44, 45, 47, 48). The parties have consented to the entry of final judgment by the undersigned United States Magistrate Judge. (Doc. 6).

**Procedural History**

Plaintiff Duro Bag Manufacturing, Inc., (Duro), initiated this diversity action against defendant Printing Services Company, Inc., (PSC), with the filing of a complaint on December 1, 2008, alleging claims for breach of contract and breach of warranty. (Doc. 1). Plaintiff filed an amended complaint on April 1, 2009, adding Duro Designer Company, Inc., (Duro Designer), a subsidiary of Duro, as a party plaintiff and setting forth allegations with respect to damages with more particularity. (Doc. 13). Defendant PSC filed an answer and counterclaim for breach of contract on April 24, 2009. (Doc. 17). On September 4, 2009, plaintiffs filed a motion for leave to file a second amended complaint, seeking to add a specific allegation that the defects in the printed impressions occurred at the time of printing. (Doc. 27). While the motion to file a second amended complaint was still pending, the parties filed cross-motions for summary judgment on October 14, 2009, in accordance with the

amended calendar order governing this case (Docs. 22, 41, 42).

On February 5, 2010, the Court granted plaintiff's motion to file a second amended complaint and vacated the balance of the amended calendar order. (Doc. 57). The parties came before the Court for a status conference on February 24, 2010, and the Court again issued an amended calendar order. (Docs. 60, 61).

Pursuant to the Court's discussions with counsel at the status conference, the parties agree that the Court may determine as a matter of law whether the parties' contract is governed by the Uniform Commercial Code (UCC). The parties further agree that the balance of their arguments set forth in their cross-motions for summary judgment should be denied without prejudice, subject to renewal after discovery has been completed as to the printing defect issues raised in the second amended complaint. Accordingly, the only issue presently before this Court is whether or not the transaction at issue is governed by the UCC. If the transaction at issue is one for the sale of goods, then the UCC governs and plaintiffs may proceed on their breach of warranty claims. If, however, the Court finds that the parties' transaction involved services, not goods, the UCC does not apply and plaintiffs' breach of warranty claims must be dismissed.

## Background & Undisputed Facts

The undisputed facts relevant to the issue pending before the Court are as follows. Duro is the world's largest manufacturer of paper bags. In October 2007, Duro contracted with its customer, Abercrombie & Fitch, (A&F), to produce a medium sized paper shopping bag printed with A&F's artwork. Duro did not have the requisite printing capability to print the artwork with the color and image specifications for the bags as ordered by A&F. Duro contracted with defendant PSC to print sheets for Duro bearing A&F's artwork that Duro intended to and did convert into shopping bags for A&F. After the sheets were printed and shipped to Duro, and converted into shopping bags, A&F allegedly rejected the bags and refused to pay Duro the amounts owed under the separate agreement between Duro and A&F. Subsequently, Duro refused to pay PSC $169,946.00 due under the terms of the parties' agreement.

The parties's initial communications regarding the printing job were by electronic mail in October 2007. (Doc. 42, Exs. 1, 3). PSC then issued a Purchase

Order reflecting the parties' agreed terms on November 14, 2007. (Doc. 42, Ex. 4). The parties continued to negotiate and amend the terms of their agreement and the corresponding Purchase Order until November 30, 2007, when the third change order became the final Purchase Order governing the transaction. (Id., Exs. 5, 6, 7). The terms of the agreement are likewise reflected in the January 8, 2008 Invoice sent to plaintiffs by PSC, following shipment of the order to Duro in Progresso, TX, on December 1, 2007. (Doc. 45, Exs. 1, 6). The invoice reflects a total amount due of $169,946.00, including: 1,364,000 printed sheets priced at $0.11 each, for a total of $160,952.00; $1,320.00 for "Prep Alterations New Files"; $824.00 for "Additional Skids" and $1,650.00 for "Solid Wood Tops" for shipping the sheets; $4,200.00 for "Press Proof"; and $1,000.00 for overtime adjusted pay. (Doc. 45, Ex. 1).

PSC performed the printing job using sheets of paper and artwork specified by A&F and supplied to PSC by Duro. The color and image specifications, as required by A&F, were also set forth by Duro.

## Applicable Law

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-

moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

This Court's jurisdiction over this action is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. A federal court exercising diversity jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. § 1652; *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 (1938). Accordingly, this Court, sitting in Ohio, will apply Ohio law. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 464-65 (1967).

In applying state law, the Sixth Circuit follows the law of the state as announced by the state's supreme court. *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir.1992); *Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 241 (6th Cir.1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id. See also In re Akron-Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir.1990); *Valente v. University of Dayton*, 689 F. Supp.2d 910, 916 (S.D. Ohio 2010)(Merz, M. J.). Thus, in the absence of more convincing evidence of what the state law is, a federal court should apply the law as declared by an intermediate state court. *Aetna Cas. and Sur. Co. v. Neff*, 30 F. Supp.2d 990, 993-994 (S.D. Ohio 1998)(Sargus, J.)(citing *Fidelity Trust Co. v. Field*, 311 U.S. 169, 177-78 (1940) and *Woodruff v. Tomlin*, 616 F.2d 924, 928-29 (6th Cir.1980)). In the present case, the parties implicitly agree that Ohio contract law governs the Court's resolution of their claims, including the question presently before the Court– namely, whether the UCC applies to the parties' transaction.

4

Ohio has adopted the applicable provisions of the UCC. *See generally* Ohio Rev. Code §§ 1301.02 et seq.; *Delorise Brown, M.D., Inc. v. Allio*, 620 N.E.2d 1020, 1021 (Ohio Ct. App. 1993). Article 2 of the UCC, as adopted by Ohio Rev. Code §§ 1302.01-1302.98, applies to "transactions in goods." The term "Goods" is defined as follows:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action. . . .

Ohio Rev. Code § 1302.01(A)(8).

While the Ohio Supreme Court has not addressed the matter yet, all Ohio appellate courts to have considered the applicability of the UCC to hybrid or "mixed" contracts for the sale of goods and services, have applied the "predominant purpose" test. *Mecanique C.N.C., Inc. v. Durr Envt'l, Inc.*, 304 F. Supp.2d 971, 976 (S.D. Ohio 2004)(Marbley, J.)(citing Ohio appellate cases). Federal courts applying Ohio law have likewise adopted the predominant purpose test. *See e.g. Mecanique, supra*; *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp.2d 889, 906 (S.D. Ohio 2009)(Smith, J.); *Franklin Publications, Inc. v. General Nutrition Corp.*, 2007 WL 2071914, * 4 (S.D. Ohio July 13, 2007)(Frost, J.); *Heidtman Steel Products, Inc. v. Compuware Corporation,* 2000 WL 621144, *5 (N.D. Ohio Feb. 15, 2000).

The "predominant purpose" test was first set forth in *Allied Industrial Services Corp. v. Kasle Iron & Metals, Inc.*, 405 N.E.2d 307 (Ohio Ct. App. 1977). The *Allied* court held that the test to determine applicability of the UCC to mixed contacts for goods and services is "whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved." 405 N.E.2d at 310. In mixed contract cases, the burden of proof lies with the party who asserts that the contract is governed by the UCC. *Mecanique,* 304 F. Supp.2d at 976. Thus, in the instant case, plaintiffs have the burden of proving that the primary purpose of the printing contract is the sale of goods.

Normally, whether or not a transaction involves goods or services is a question of fact for the jury. *Mecanique*, 304 F. Supp.2d at 976-77 (citing *Valleaire Golf Club,*

5

*Inc. v. Conrad,* 2003 WL 22900451, *1-*2 (Ohio Ct. App. Dec. 10, 2003)). "A jury, however, should only resolve this issue if there is a true factual dispute, not if the division between goods and services merely involves a close call." *Id.*; *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp.2d 899, 906-907 (S.D. Ohio 2009)(Smith, J.). *See also Franklin Publications Inc. v. General Nutrition Corp.,* 2007 WL 2071914 (S.D. Ohio July 13, 2007)(Frost, J.)(treating predominant purpose test "as a matter of law" to determine whether UCC applied to breach of contract claims); and *Doe v. SexSearch.com,* 502 F. Supp.2d 719, 731 (N.D. Ohio 2007) (considering as a matter of law whether Ohio's UCC applied to Internet dating service contract and whether contract was for sale of goods or services). Here, though the parties dispute the "predominant purpose" of the contract, there is no dispute regarding what goods and services were within the purview of the agreement. Accordingly, the question of whether the transaction is governed by the UCC is a question of law for this Court.

## Opinion

Plaintiff argues that the parties' contract is one for the sale of goods and clearly governed by the UCC. Plaintiff contends that the printed sheets ordered by Duro fall squarely within the UCC's definition of "goods" and that the contract language itself, as reflected in the November 30, 2007, Purchase Order evinces an agreement for the sale of a certain number of print sheets, not services. Plaintiff further argues that even if the Court finds that the transaction involved a mixed or hybrid contract for goods and services, under the predominant purpose test, the factors weigh clearly in favor of a finding that the parties agreed to a sale of goods.

Defendant counters that the agreement was one for services, work and labor, not for the sale of goods. PSC points to the fact that the printing was done using artwork and paper supplied by Duro and returned to Duro for fabrication in to shopping bags. PSC relies on several cases involving publishing, which hold that a contract in which a printer prints, binds, and completes a book is a contract for the work, labor, and services necessary to fabricate the book, and not one for the sale of the books from the printer to the publisher.

The parties agree that if the Court finds the contract to be one involving both goods and services that the "predominant purpose" test governs the Court's determination as to whether the UCC applies to the contract. In applying the

predominant purpose test, Ohio federal and state appellate courts have considered several factors, including but not limited to the following: 1) the nature and language of the contract; 2) the nature of the business of the supplier or seller; 3) the price or value allocation in the contract between goods and services to be provided; and 4) the issues involved in the dispute. *See Executone*, 665 F. Supp.2d at 906 (citing *Heidtman Steel,* 2000 WL 621144, at *5).

Admittedly, this case involves a close call on the question of whether the UCC applies to the agreement between the parties. However, there is no dispute regarding what was within the purview of the agreement. While the parties may disagree as to the ultimate conclusion to be drawn from the facts, the question of whether the transaction is governed by the UCC is clearly a question of law for this Court. As discussed below, the Court concludes that the parties' agreement was predominantly one for services to which the UCC does not apply.

At first blush, it appears that the contract at issue could be considered an agreement for the sale of goods. The contract itself contains per piece pricing language for each sheet printed and is based on a Purchase Order which implies the sale of goods. However, as the contract necessarily involved both goods, such as palates and wood tops for shipping, and services, namely the impressions re-producing A&F's artwork on the individual sheets, the contract is necessarily "mixed." As noted above, the Court must consider the ultimate issue of whether the predominant purpose of the contract was the rendition of service, with goods incidentally involved, or whether the contract was for the sale of goods, with labor incidentally involved. *Allied Industrial Services*, 405 N.E.2d at 310. Upon consideration of the purpose of the contract, the nature of defendant's business, and the underlying issues involved in the dispute, this Court concludes that the better view is that the transaction was one for printing services, not the sale of individual printed sheets.

Contrary to plaintiffs assertions, the fact that the contract included per sheet pricing is not dispositive of the issue. A per sheet billing system does not transform the nature of the contract from a services agreement to one for the sale of goods. *Franklin Publications*, 2007 WL 2071914 at *5, n.3 ("The fact that the contracts set a per-copy billing arrangement does not transform the predominant purpose of the service contracts into contracts for the sale of goods. Rather, it is but one factor that the Court must consider in looking at the entirety of the contracts."). In this case,

Duro provided the sheets and the A&F artwork to PSC as well as the specifications for ink color and image specifications. PSC agreed to provide the work, labor, and services necessary to re-produce the artwork to specifications on sheets supplied by Duro and then to ship the sheets back to Duro for further processing into shopping bags. Duro has in-house printing facilities but lacked the capability to reproduce the images to the required A&F specifications. Accordingly, it sought a service from PSC– namely, imprinting on the sheets to the specification of Duro's customer A&F. The fact that the pricing was calculated per sheet bespeaks of the need to ensure that the correct number of impressions were made per Duro's specifications so that Duro could obtain the requisite number of sheets for production of the bags ordered by its customer, A&F. PSC was not selling sheets it produced for buyers to make shopping bags, rather, it was rendering the service of printing images on Duro's sheets so that Duro could fulfill its obligations to its own client.

This Court's conclusion is supported in part by cases involving printing and publishing where courts have recognized that the printing and binding of books by a printer does not constitute a sale of goods where the manuscript, artwork, and other content was provided to the printer for reproduction and fabrication into the actual book itself, or where the content of the printed material required the printer to apply special skills and knowledge. *See e.g. Wm. H. Wise & Co. v. Rand McNally & Co.*, 195 F. Supp. 621 (S.D. N.Y. 1961); *W.H. Smith Publishers, Inc. v. Plexus Publ'g, Ltd.,* 557 F. Supp. 546 (S.D. N.Y. 1983); *Printers II, Inc. v. Prof'l Publ'g, Inc.*, 615 F. Supp. 767 (S.D. N.Y. 1985);*Printing Center of Texas, Inc. V. Supermind Publ'g Co., Inc.*, 669 S.W.2d 779 (Tex. Ct. App. 1984); *Gross Valentino Printing Co. v. Clarke*, 458 N.E.2d 1027 (Ill. Ct. App. 1983). *Accord Franklin Publications*, 2007 WL 2071914 at *4.

The Court's determination that the parties' agreement is for services and therefore is not governed by the UCC is further supported by the Sixth Circuit's opinion in *Wells v. 10-X Manuf'g Co.*, 609 F.2d 248 (6th Cir. 1979). In *Wells*, the plaintiff designed a chamois hunting shirt and contracted with defendant to "cut, make and finish" the shirt according to plaintiff's specifications. 609 F.2d 255 Wells provided the cloth, pattern, buttons, and all other necessary materials except for the thread. As the *Wells* Court noted:

> The language used in the contract clearly bespeaks the intention of the parties that [defendant's] obligation under the contract was essentially

to provide the manpower and machine capabilities for production of the hunting shirt. That the only material supplied by [defendant] in the entire production process was thread is a factor to be considered in characterizing the contract(sic) one for services rather than goods. . . . Viewing the contract in the totality of circumstances, we conclude it is correctly characterized as a contract for the rendition of services to which the [UCC] is not applicable.

*Id.* Like *Wells*, the agreement *sub judice* is for the manpower and machine capabilities to produce the specified impression on each sheet provided by Duro. The only material supplied by PSC was the ink used to make the impression to A&F's specification. Under the totality of the circumstances, the Court finds that the transaction between the parties was predominantly for work, labor, and services such that the UCC is inapplicable.

**IT IS THEREFORE ORDERED THAT**: Defendant's motion for summary judgment (Doc. 41) is GRANTED IN PART and DENIED IN PART, SUBJECT TO RENEWAL such that plaintiff's breach of warranty claims arising under the UCC are DISMISSED pursuant to the terms of this Order, and Plaintiffs' partial summary judgment motion (Doc. 42) is DENIED as to the claim that the transaction is governed by the UCC, and DENIED WITHOUT PREJUDICE SUBJECT TO RENEWAL as to all other arguments raised by the motion.

Timothy S. Hogan
United States Magistrate Judge

9